UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BAILEY REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:18-CV-1968-GCS |
| | ) | |
| SOUTHERN ILLINOIS | ) | |
| UNIVERSITY d/b/a SOUTHERN | ) | |
| ILLINOIS UNIVERSITY AT | ) | |
| EDWARDSVILLE, | ) | |
| RANDALL PEMBROOK, | ) | |
| ASHLEY COX, | ) | |
| KARA SHUSTRIN, and | ) | |
| CHAD MARTINEZ, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

Plaintiff Bailey Reed, who was a student at Southern Illinois University at Edwardsville in 2017, alleges that Defendants Southern Illinois University d/b/a Southern Illinois University at Edwardsville ("SIUE"), Randall Pembrook, Ashley Cox, Kara Shustrin and Chad Martinez engaged in a course of gender discrimination and violated her constitutional rights after Reed was sexually assaulted by another student. Before the Court are Defendants' motions to dismiss (Docs. 9, 12). For the reasons delineated below, the Court grants Defendants' motion and directs Plaintiff to file an amended complaint on or before October 25, 2019.

## Factual Allegations

In her complaint, Plaintiff Bailey Reed alleges that she was a student at Southern Illinois University at Edwardsville in October 2017, living in campus housing. Throughout the month of October, she and another SIUE student exchanged friendly and "flirty" messages. She liked the other student. At one point, the other student sent Reed a text and asked, "Do you find me trustworthy?" She replied, "From what I know, Absolutely." He then asked, "Do you think I'm respectful?" Reed replied, "From what I know, I think you're a great guy."

About a day or so after the exchange, the student asked Reed via online communication what she was doing, and she replied that she was getting ready to meet a friend. The student responded that he was coming over to her on-campus apartment. Reed alleges that she did not invite him over, but she did not protest because she liked him.

Reed signed the student into her building, allowing him to come to her apartment. Once there, he grabbed her by the hand and pulled her onto his lap. Reed was uncomfortable and tried to pull herself away. The student began kissing her, and she kissed him back. She quickly told him, however, that she did not want to have sex. He ignored her and picked her up and threw her onto her bed. He proceeded to sexually assault her despite Reed repeatedly telling him "no" and crying. The student repeatedly told her, "It's fine." Later that night, after discussing it with a friend and with her mother, Reed went to Anderson Hospital to report that she had been raped.

At the hospital, a woman entered Reed's room and told her that she worked for

a non-profit rape crisis center named Call for Help and that another Call for Help employee, Defendant Ashley Cox, who worked with all SIUE students who were sexually assaulted, would be in touch. Reed was scared and traumatized when she received the call from Cox. Cox allegedly told Reed that she worked for Call for Help and that their conversations were confidential. Cox failed to reveal that she had become an employee of SIUE approximately four months earlier. Cox told Reed that she did not have to report the rape, but Reed decided she wanted to and went to the SIUE police department. Cox met her there.

At the police department, Cox and Reed spoke privately, and Cox asked Reed how she wanted to proceed. Reed said that she wanted to report the rape and that she wanted to move from her on-campus apartment. Cox then briefly described the Title IX process, allegedly emphasizing how difficult it, and the criminal process, would be. She asked if Reed was sure she wanted to report the assault, and Reed confirmed that she wanted to report it to both the Title IX Office and to the police.

After the conversation, Reed's mother, in front of Reed, told Cox that she was concerned about Reed remaining in the apartment where she had been assaulted, and Cox replied sternly that there was nothing that could be done. Cox then told Reed that she would inform SIUE's Title IX office that Reed wanted to report a sexual assault and that someone from the office would contact her within a few days. When no one from the office called, Reed's mother tried to reach out to Cox, but Cox did not return her calls.

Reed's mother reached out to the Title IX office directly, but she did not receive

a response until she left a message threating to contact a Dean. At that point, she was told that the entire office was out and that it would be a week or more before someone was available to meet with the family. Reed's mother demanded quicker action, and a meeting eventually was scheduled.

Reed and her family first met with Defendant Kara Shustrin, an Associate Dean, who said that the Title IX office was aware of the assault but that Cox told them that Reed did not want to make a report. Reed told her that she did want to make a report, and Shustrin and Defendant Chad Martinez, the Title IX Coordinator, offered Cox as a support contact and liaison for the Title IX process. Reed declined the offer of Cox's assistance. Reed alleges that she and her counsel did not learn of Cox's status as an SIUE employee until September 2018 through online research, and she alleges that Cox discouraged her from reporting her sexual assault and failed to start the Title IX process, despite Reed's desire to proceed.

Reed sought safety accommodations from the Title IX Office so that she could attend school without issue. First, she asked for assistance with a class in which both she and her attacker were enrolled. Shustrin and Martinez told Reed that she could attend by Skype as long as she could find a friend to set up the Skype in the classroom for her. Meanwhile, her attacker could attend class whenever he wanted.

Reed and her family protested this exclusion from direct access to her education, and eventually SIUE told her that her attacker would be allowed to attend only every other class and that Reed could have a friend use Skype or Facetime on those days. Reed alleges that Defendants did not offer technological assistance, nor

did they ensure that she had a friend in class who could assist her with attending remotely. Plaintiff alleges that Defendants' offer was not an accommodation, but rather their suggested plan cut her off from half of her coursework.

Reed sought a civil order of protection against her attacker in the Circuit Court in Madison County, Illinois, and an emergency no-contact order was issued on October 27, 2018. The emergency order required Reed's attacker to stay 500 feet away from her, and it prevented him from attending SIUE. Reed told Defendants about the order, and Shustrin and Martinez told her that it was her responsibility to enforce. The order was modified on November 16, 2017, to allow Reed's attacker to visit his campus apartment and to attend two specific meetings with a professor provided that he communicated through his attorney the dates and times so that Reed could avoid campus. He also was permitted to attend his classes that Reed was not enrolled in, but he remained prohibited from initiating any contact with Reed. He also was ordered to make efforts to stay away from Reed if he encountered her.

Reed's friends began reporting that her attacker was violating the order by visiting campus during times he did not have class and by going to the school cafeteria and to the Student Disabilities Services Department where Reed received services. She reported this information to Shustrin and Martinez, but they failed to act.

Reed alleges that, emboldened by the lack of enforcement, her attacker violated the order of protection in December 2017. He went to a class the two shared, sat in her seat, and waited for her to arrive. One of Reed's friends alerted her before she arrived, and Reed called the police. The student was arrested, but SIUE did not

punish him for his actions and did not offer her any safety-related accommodations to Reed after the violation of the protective order.

Defendants Shustrin and Martinez were responsible for investigating the sexual assault, and the investigation began in mid-October and continued through late February 2018, lasting nearly 100 days. SIUE maintains a written and published Title IX investigation policy, which instructs that a "Title IX Investigation should be completed within thirty (30) working days of receipt of a complaint. The Title IX Coordinator may extend the timeframe for good cause, including University breaks." (Doc. 1, ¶ 35). When Reed inquired as to the status of the investigation, Shustrin and Martinez told her that the other student requested extensions. Reed alleges this does not constitute good cause and that Defendants admitted they gave him too much time.

Reed also alleges that the investigation was heavily gender-biased and that the investigator's questions were so sexually-charged and discriminatory that one witness reported that she cried during her interview and found the interview biased. Reed also takes issue with the investigation, as counsel for her attacker requested and received security footage from her dormitory on the night of the assault, but her counsel's request for the same footage was denied.

Martinez interviewed Reed a second time in January 2018. He allegedly asked Reed to describe in detail the sexual positions of her rape, and, when Reed was confused as to the order of some text messages that she sent after the assault, he said, "Gotcha." Reed claims that moments later he explained to her how to appeal the decision of the Title IX Office, almost a month before a decision was issued.

Two days after the interview, a hearing on Reed's order of protection was held in Madison County. She testified and was cross-examined by her attacker's attorney. He also testified and was cross-examined by Reed's attorney. The judge found that Reed was "a victim of non-consensual sexual penetration" and that she was entitled to a full, permanent no-contact order. She alleges that Defendants were not present for the hearing and did not review a transcript before reaching a decision in their investigation. (Doc. 1, ¶ 42).

On February 9, 2018, the Title IX Office issued a decision concluding that Reed's attacker did not violate any SIUE sexual assault or harassment policies. The decision offered five findings in support: (1) Reed liked and wanted to spend time with her attacker before the assault; (2) Reed enjoyed attention from him and had been "flirty" before the assault; (3) Reed didn't act the way Martinez believed a rape victim should act immediately following the rape; (4) Reed had her timeline of sexual acts and communications confused, undermining her credibility; and (5) Martinez found the sexual positions of the assault as described by Reed difficult to "envision."

Reed appealed the decision, and the Sexual Harassment Panel held a hearing. The panel questioned Reed and her attacker. When asked if she had any new evidence, Reed presented evidence that another victim had come forward to report an attempted sexual assault by Reed's attacker. The panel overruled the findings of the Title IX Office and found for Reed.

A few weeks after the ruling, Defendant Randall Pembrook, the Chancellor, emailed Reed's counsel explaining that his determination would be late. Neither Reed

nor her counsel had been made aware of any determination pending before Pembrook. Counsel eventually uncovered that Pembrook was reviewing the decision of the Sexual Harassment Panel. Pembrook reversed the Sexual Harassment Panel on April 19, 2018. He did not inform Reed directly of his decision, instead sending a letter addressed to the other student to that student's attorney via email and cc'ing Reed's counsel. He did not offer an explanation for his decision, but he did express that Reed's attacker received all his due process rights. Pembrook's decision did not address any impact on Reed's rights.

Reed appealed to the Board of Trustees, but the Board refused to hear the matter on procedural grounds in September 2018. During the pendency of Reed's appeal, the SIUE President filed a brief in support of Reed's attacker and of Defendants' investigation and findings.

Reed also points out that in August 2017 the Department of Education found that SIUE had a pattern of failing to fully investigate sexual assault claims and that Defendants' investigations were known to exclude relevant evidence and to miss timely deadlines. The Department of Education also found that Defendant Martinez and the appeal panel at SIUE were not adequately trained on what relevant evidence should be considered. SIUE was ordered to provide training to its Title IX employees.

Reed alleges five counts against Defendants. She alleges that SIUE acted with deliberate indifference to sexual harassment and created or subjected Reed to a hostile educational environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a) (Count I). She also alleges that SIUE failed to

accommodate or eliminate a hostile educational environment and failed to prevent retaliation in violation of Title IX (Count II). Reed further alleges that SIUE, Defendant Martinez and Defendant Pembrook displayed gender discrimination and reached an erroneous result based on gender bias throughout the investigation of her sexual assault complaint in violation of Title IX (Count III). In addition, Reed brings a Fourteenth Amendment Equal Protection claim against all Defendants pursuant to 42 U.S.C. § 1983, alleging violations of her rights to personal security, bodily integrity and equal protection for failing to investigate properly and discipline her attacker and for failing to train and supervise adequately Defendants Pembrook, Cox, Shustrin and Martinez (Count IV). Finally, Reed alleges that SIUE maintains policies and practices that constitute disparate treatment of females and that have a disparate impact on female students in violation of the Fourteenth Amendment Equal Protection Clause citing to *Monell v. Dept. of Social Services of the City of New York*, 436 U.S. 658 (1978) (Count V).

## LEGAL STANDARDS

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555 and

quoting Fed. R. Civ. P. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 677-78). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

## ANALYSIS

Defendants move for dismissal of Counts I-III because Plaintiff failed to plead that Defendants are recipients of federal funds, as required for Title IX claims. Reed concedes that she failed to so plead. As such, the Court dismisses Counts I, II, and III with leave to amend and declines to reach Defendants' remaining arguments for dismissal as to these counts.

As to Count IV, Defendants argue that SIUE, Pembrook, Shustrin and Martinez are not persons under § 1983, that is to say that they cannot be sued for damages in their official capacities. Plaintiff concedes the point as to SIUE and moves to voluntarily dismiss SIUE from Count IV. The mechanism to remove one party or claim from a lawsuit is to file an amended complaint rather than voluntarily dismissing portions of an action. *See Taylor v. Brown*, 787 F.3d 851, 857-858 (7th Cir. 2015)(finding that voluntary dismissals are governed by Rule 41, which is limited to dismissals of "actions" not "parties" or "claims", and that an amended complaint must be used to cleave away one party or claim from an otherwise continuing action). As the Court already granted Reed leave to amend her complaint as to Counts I, II, and

III, that leave to amend extends to Count IV.

The parties, in a reply brief and a motion to strike the reply, dispute whether Defendants Pembrook, Shustrin and Martinez are sued in their individual capacities or their official capacities. The Court finds that this dispute can be easily addressed when Reed amends her complaint. To the extent that Reed's complaint currently brings Count IV against Defendants Pembrook, Shustrin and Martinez in their official capacities, she may not recover money damages. The Court declines to consider dismissal based on qualified immunity at this time, given the forthcoming amended complaint and Defendants' failure to raise the issue in a developed manner until their reply brief. For these reasons, the undersigned finds that Plaintiff's motion to strike Defendants' reply brief is moot.

As to Count V, Reed may not recover money damages from SIUE, but she can pursue injunctive relief. The Court, however, notes the Seventh Circuit has held that *Monell* claims can only be brought against municipalities and not against states or state departments. *See, e.g.*, *Joseph v. Bd. of Regents of Univ. of Wisconsin Sys.*, 432 F.3d 746, 748-749 (7th Cir. 2005). As Reed will be amending her complaint, the Court withholds ruling on whether a policy and practice claim can proceed against SIUE at this time.

## Conclusion

For the above-stated reasons, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES without prejudice** Plaintiff's complaint. Plaintiff Bailey Reed is granted leave to amend her complaint, and her amended complaint must be

filed on or before October 25, 2019. Plaintiff's motion to strike Defendants' reply is

**DENIED as MOOT**.

**IT IS SO ORDERED.**

Dated: September 27, 2019.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2019.09.27 16:08:47 -05'00'

_____
GILBERT C. SISON
United States Magistrate Judge