## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **BAILEY REED,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:18-CV-1968-GCS** |
| | ) | |
| **SOUTHERN ILLINOIS UNIVERSITY** | ) | |
| **d/b/a SOUTHERN ILLINOIS** | ) | |
| **UNIVERSITY AT EDWARDSVILLE,** | ) | |
| **RANDALL PEMBROOK,** | ) | |
| **KARA SHUSTRIN, and** | ) | |
| **CHAD MARTINEZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

In her second amended complaint, Plaintiff Bailey Reed brings five claims against Defendants Southern Illinois University d/b/a Southern Illinois University at Edwardsville ("SIUE"), Randall Pembrook, Kara Shustrin, and Chad Martinez following an allegedly mishandled Title IX investigation into a campus sexual assault that Reed reported to school officials. Reed alleges Title IX violations against SIUE for demonstrating deliberate indifference to sexual harassment and a hostile environment (Count I); for failure to accommodate, failure to eliminate a hostile environment, and failure to prevent retaliation against her (Count II); for gender discrimination based on an erroneous result (Count III); and for fostering an official policy and practice of deliberate indifference to sexual harassment and violence on campus (Count V). She also alleges violations of her equal protection rights to personal security and bodily integrity

by all Defendants (Count IV). By motion dated May 21, 2020, SIUE seeks to strike certain portions of Reed's second amended complaint and asks the Court to dismiss Counts II, III, and V. (Doc. 103). Reed responded in opposition on June 4, 2020. For the reasons delineated below, SIUE's motion is granted in part and denied in part.

## MOTIONS TO STRIKE

SIUE asks the Court to strike allegations in the second amended complaint that fall into three categories: (1) references to Ashley Cox as a defendant, who is no longer a party to this action; (2) references to Ashley Cox as an employee of SIUE; and (3) references to actions by Plaintiff's counsel during the investigation into Reed's allegations of sexual assault. Though motions to strike are disfavored, Federal Rule of Civil Procedure 12(f) allows district courts to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A moving party must show that the "challenged allegations 'are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial.'" *Siegel v. HSBC Holdings, plc*, 283 F.Supp.3d 722, 730 (N.D. Ill. 2017)(quoting *E & J Gallo Winery v. Morand Bros. Beverage Co.*, 247 F.Supp.2d 979, 982 (N.D. Ill. 2003)(internal quotations omitted)). That is, SIUE, as the moving party, bears the burden of demonstrating that the allegations should be stricken.

The Seventh Circuit directs that district courts should only grant motions where a moving party can show that the challenged language either "bears no possible relation to the controversy" (i.e., whether it is relevant to the claims at issue) or "may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.* 961 F.2d 654, 664 (7th Cir. 1992). In resolving a Rule 12(f) motion, the Court applies the same standard as that

applied under Rule 12(b)(6). Reed's well-pleaded allegations are accepted as true and are viewed in the light most favorable to her. *See Santiago v. Wells,* 599 F.3d 749, 756 (7th Cir. 2010).[1]

Reed does not object to SIUE's request to strike references to Ashley Cox as a defendant, explaining the references were the result of a clerical error. As such, the references will be stricken, and the Court turns to SIUE's remaining arguments. In a brief argument, SIUE asks the Court to strike allegations in five paragraphs that refer to Ashley Cox as an employee of SIUE. Of the five paragraphs, the first, paragraph 5, is a paragraph listing the parties and is covered by the motion to strike references to Cox as a defendant. The other four describe Cox as an employee of "Call for Help," a non-profit rape crisis center and allege that she also was an employee of SIUE. SIUE calls the allegations conclusory, unsupported, and contrary to undisputed facts, but they raise no developed argument supporting the motion to strike. As such, the motion to strike the references to Cox as an SIUE employee fails to meet the high burden for imposing such a disfavored remedy.

Similarly, the argument that the statements about counsel's role in the second amended complaint's factual allegations must be stricken is undeveloped. SIUE recites a portion of Illinois Supreme Court Rule 3.7, which provides that, generally, lawyers should not "act as advocate at a trial in which the lawyer is likely to be a necessary

---

[1]      Reed attaches to her response exhibits that are not part of her amended complaint or any pleading. The Court has the discretion to either exclude the exhibits or, with notice, to convert SIU's motion to one for summary judgment under Rule 56. *See Levenstein v. Salafsky,* 164 F.3d 345, 347 (7th Cir. 1998). In this instance, the Court will ignore Reed's exhibits and examine SIU's arguments under Rule 12.

witness," and suggests, without analysis or support, that it is unnecessary and improper for Plaintiff's counsel to inject herself into the factual allegations in this action. However, the plain language of the rule refers to disqualification only at trial, and given that the case is still in the pleading stage, such an argument is clearly premature. *See, e.g., DT Boring, Inc. v. Chicago Public Building Commission*, No. 15-C-11222, 2016 WL 3580756, at *5 (N.D. Ill. June 28, 2016)(noting that plaintiff's motion for disqualification under Rule 3.7 should be denied because the action was still in the pleading stage).

There are exceptions to the general rule regarding lawyers as necessary witnesses, which are not addressed in the motion, and SIUE fails to establish that Plaintiff's counsel is a necessary witness. In fact, Reed in her response explains that the allegations can be established through methods that do not include the attorney's testimony, which means that the attorney is not a "necessary witness." *See, e.g., Walton v. Diamond*, No. 12-C-4493, 2012 WL 6587723, at *2 (N.D. Ill. Dec. 14, 2012)(stating that definition of "necessary witness" is "one whose testimony is unobtainable elsewhere[]" and that attorney is not a necessary witness where evidence can be elicited through other means). The allegations have gone unchallenged in this action through multiple iterations of Reed's complaint, and the Court will not strike them now without a thorough analysis from the moving party.

## MOTION TO DISMISS

### 1. Motion to Dismiss Standard

A complaint must include enough factual content to give the opposing party notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 698 (2009). To satisfy the notice-pleading standard of Rule 8, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" in a manner that provides the defendant with "fair notice" of the claim and its basis. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007)(citing *Twombly*, 550 U.S. at 555 and quoting Fed. R. Civ. Proc. 8(a)(2)). In ruling on a motion to dismiss for failure to state a claim, a court must "examine whether the allegations in the complaint state a 'plausible' claim for relief." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)(citing *Iqbal*, 556 U.S. at 677-678). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," rather than providing allegations that do not rise above the speculative level. *Id.*

### 2. Allegations Relevant to Counts II, III, and V

SIUE seeks dismissal of Counts II, III, and V of Reed's second amended complaint. The Court has recited Reed's allegations at length in earlier orders and need not repeat them here. *See* Doc. 58, 59, 91. Relevant to Count II, Reed alleges that SIUE demonstrated deliberate indifference to sexual harassment and to a hostile educational environment by failing to investigate in a timely manner and failing to discipline the student who Reed alleges sexually assaulted her. She also claims that she was excluded from participating in, and was denied the benefits of, her educational program due to: training failures by SIUE, the favoring of male students in Title IX investigations, displays of hostility towards gender and reliance on gender based attitudes and stereotypes by SIUE employees and officials, offering of more rights and protections to a male student than to

a female student, and through other actions which she claims demonstrate both a failure to accommodate her safety needs and a desire to undermine her credibility in a public manner.

In Count III, Reed alleges that SIUE displayed gender discrimination in its investigation of her allegations of sexual assault, pointing to Defendant Martinez's allegedly biased and inappropriate questioning of Reed and other female witnesses and to his reliance on gender stereotypes in his investigative findings. She also alleges that the appellate process was tainted by gender bias, leading SIUE to reach an erroneous result based on that bias. In Count V, Reed alleges that SIUE had an official policy, as evidenced by pattern and practice, of deliberate indifference to sexual harassment and sexual violence on campus. That policy allegedly created a heightened risk of students being victimized.

### 3. Count II and Count III: Deliberate Indifference Claims Based on Title IX Investigation and Post-Report Conduct by Defendants

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). SIUE argues that Count II must be dismissed because neither the Supreme Court nor the Seventh Circuit expressly recognize claims for failure to accommodate, creation of a hostile environment, or retaliation under Title IX arising out of student-on-student discrimination. SIUE cites to *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999), in which the Supreme Court weighed "whether a private damages

action may lie against the school board in cases of student-on-student harassment," and concluded that "it may, but only where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Id.* at 633. The Court continued that "such an action will lie only for harassment that is so severe pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.*

The Court explained that where a "funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it." *Id.* at 644-645 (internal quotations and citing references omitted). Educational institutions "may be liable for 'subject[ing]' their students to discrimination where the [institution] is deliberately indifferent to known acts of student-on-student sexual harassment and the harasser is under the school's disciplinary authority." *Id.* at 646-647. The Court went further, however, adding that "[s]chool administrators will continue to enjoy the flexibility they require so long as funding recipients are deemed 'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* as 648.

SIUE summarizes *Davis* as a case where "a student reported being sexually harassed repeatedly by another student, but the school did almost nothing to address the harassment." (Doc. 104, p. 5 n.2). Based on *Davis* and interpretations of it in this Circuit,

SIUE suggests that its "educational and disciplinary decisions and actions are not actionable" and that Reed's claim should be read only as one that challenges such decisions. (Doc. 104, p. 6). In doing so, SIUE relies on *Gabrielle M. v. Park Forest-Chicago Heights, IL Sch. Dist.*, 315 F.3d 817 (7th Cir. 2003). In *Gabrielle M.*, the Seventh Circuit explains that *Davis* requires that "school[s] not act *clearly unreasonably* in response to known instances of harassment." *Id.* at 825 (citing *Davis*, 526 U.S. at 649) (emphasis in original). However, the case does not go so far as to hold that educational and disciplinary decisions are not actionable. Rather, *Gabrielle M.* notes that "courts should refrain [from] second-guessing the disciplinary decisions made by school administrators." *Id.* at 825 (citing *Davis*, 526 U.S. at 649). This distinction is significant in weighing whether Reed states a claim.

There is space in these requirements to second-guess decisions if they are clearly unreasonable, so Reed's claim is not barred by *Davis* and its progeny. Reed's claim is pleaded in a way that lines up with SIUE's own description of *Davis*: she alleges that she was sexually assaulted by a student, that she got an order of protection against that student, that the student violated the order of protection, and that the school's investigation into her sexual assault was deeply flawed. In essence, Reed claims that she was repeatedly harassed and that SIUE did almost nothing about it. Reed sufficiently states factual allegations that, if true, could rise to the level of a clearly unreasonable response to her sexual assault reporting. As such, Reed states a claim that survives SIUE's motion to dismiss, even under the limitations of *Davis*.

SIUE also argues that neither the Supreme Court nor the Seventh Circuit recognize

claims of an erroneous result based on gender bias and that *Doe v. Columbia College Chicago*, 933 F.3d 849 (7th Cir. 2019) specifically rejects an erroneous result theory for Title IX claims. In *Columbia College*, the Seventh Circuit reiterated the elements of a Title IX discrimination claim. To successfully state a claim, a plaintiff must "allege (1) the educational institution received federal funding, (2) plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on gender." *Columbia College*, 933 F.3d at 854 (citing *Doe v. Purdue University*, 928 F.3d 652, 657 (7th Cir. 2019)).

SIUE relies on a statement by the Seventh Circuit as supporting the contention that an erroneous result claim does not exist. Specifically, the Seventh Circuit stated: "[r]ecently, this Court held that tests or categories labeled 'erroneous outcome' or 'selective enforcement' or 'deliberate indifference' or 'archaic assumptions' need not be considered because at bottom they all ask the same question: whether 'the alleged facts, if true, raise a plausible inference that the university discriminated . . . "on the basis of sex"?'" *Columbia College*, 933 F.3d at 854-855 (citing *Purdue University*, 928 F.3d at 668-669) (alterations in original). However, this statement, when read in context, leads the Court to a different conclusion, *i.e.*, how a plaintiff labels a claim is not instructive to its success; rather, the Court must always weigh whether a claim plausibly alleges that a university discriminated on the basis of sex regardless of the label a plaintiff assigns to a claim. In Count III, Reed alleges each of the elements of a Title IX discrimination claim, and the Court declines to adopt SIUE's position that there is no erroneous result theory of relief available to her under controlling precedent.

Finally, in a single sentence directed at Count II and a single sentence directed at Count III, SIUE argues that Counts II and III must be dismissed as duplicative of Count I. In Count I, Reed alleges that SIUE demonstrated deliberate indifference to sexual harassment and to a hostile campus environment by failing promptly and appropriately to investigate and respond to her sexual harassment allegations. Without a more developed argument from SIUE to the contrary, the Court declines to dismiss Counts II and III as duplicative of Count I in that multiple theories of relief and different conduct can give rise to Title IX claims in a variety of situations.[2] Reed's claims, on their face, point to different conduct and different theories of discrimination such that they are not pleaded in a manner that is duplicative.

### 4. Count V: Pre-Assault Official Policy Claim

As to Count V, SIUE again argues that an official policy claim is not recognized by the Supreme Court or by the Seventh Circuit, so it must be dismissed. Both the Ninth Circuit, in *Karasek v. Regents of Univ. of California*, 956 F.3d 1093 (9th Cir. 2020), and the 10th Circuit, in *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170 (10th Cir. 2007), recognize official policy claims based on Supreme Court precedent in Title IX discrimination cases. In *Simpson*, the Tenth Circuit analyzed *Davis* and an earlier Supreme Court case, *Gebser v. Lago Vista Independent School District*, 524 U.S. 274 (1998), and stated:

> In the context of *Gebser* or *Davis,* the school district could not be said to have *intentionally* subjected students to harassment unless it knew of the

---

[2]   SIUE cites to *Doe v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957 (C.D. Ill. 2010) to support its argument for dismissing alternative Title IX claims as being duplicative of a Title IX deliberative indifference claim.  However, the court in *Doe* offers little by way of analysis and cites to no legal authority for its holding.  As such, *Doe* is of no persuasive value to this Court, and the Court chooses not to follow it.

harassment and deliberately decided not to take remedial action. But the §
1983 municipal-liability cases reveal how the standard changes when the
claim "involve[s] official policy," *Gebser,* 524 U.S. at 290, 118 S.Ct. 1989,
although the underlying principle—liability only for intentional acts by the
institution itself—remains the same.

. . .

We conclude that a funding recipient can be said to have "intentionally
acted in clear violation of Title IX," *Davis,* 526 U.S. at 642, 119 S.Ct. 1661,
when the violation is caused by official policy, which may be a policy of
deliberate indifference to providing adequate training or guidance that is
obviously necessary for implementation of a specific program or policy of
the recipient. Implementation of an official policy can certainly be a
circumstance in which the recipient exercises significant "control over the
harasser and the environment in which the harassment occurs." *Id.* at 644,
119 S.Ct. 1661.

*Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007) (emphasis in

original).

To suggest that Supreme Court precedent does not recognize an official policy

claim is unsupported by precedent and analysis in other Circuits. While the issue has not

been addressed in the Seventh Circuit, that alone is insufficient to lead this Court to rule

definitively that such a claim does not exist or has been rejected or not recognized in this

Circuit. As Reed argues, there is a significant difference between a claim that is not

recognized and a claim that has yet to be considered. Caution should be exercised before

stating definitely that a claim is not recognized.

SIUE also argues that Reed fails to plead facts to establish each element of an

official policy claim using the elements laid out in *Karasek,* the case Reed relied in moving

to amend her complaint. As an initial matter, a Title IX official policy claim, like all Title

IX claims, requires that a plaintiff allege that an official policy of a funding recipient

discriminates on the basis of sex. *See Gebser*, 524 U.S. at 290. In *Karasek*, the Ninth Circuit noted that the official policy, or pre-assault, claim at issue involved a school intentionally violating Title IX. *See Karasek*, 956 F.3d at 1112 (citing *Davis*, 526 U.S. at 642). In such an instance, a "school need not have had actual knowledge of a specific instance of sexual misconduct or responded with deliberate indifference to that misconduct before damages liability may attach." *Id*. (citing *Gebser*, 524 U.S. at 290).

In *Karasek*, students alleged an official policy claim based on a university's alleged avoidance of Title IX reporting requirements by funneling sexual harassment reports through an informal investigation process. *See Karasek*, 956 F.3d at 1114. The Ninth Circuit considered the appropriate elements of such an official policy claim and held that:

> [A] pre-assault claim should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct,[] (2) which created a heightened risk of sexual harassment that was known or obvious (3) in a context subject to the school's control, and (4) as a result, the plaintiff suffered harassment that was "so severe, pervasive, and objectively offensive that it can be said to [have] deprive[d] the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Davis*, 526 U.S. at 650, 119 S.Ct. 1661.

*Id.* at 1112.

*Karasek* requires the heightened risk to be known or obvious, but not that a university have actual knowledge. Other courts, however, do require actual knowledge of a more particularized risk. In the Southern District of New York, "[p]re-assault cases have found that universities may be held responsible for its [sic] pre-assault, deliberate indifference when they have 'actual knowledge of sexual assault(s) committed in a *particular* context or program or by a *particular* perpetrator or perpetrators.'" *Roskin-Frazee*

*v. Columbia University*, No. 17 Civ. 2032 (GBD), 2018 WL 6523721, at *5 (S.D.N.Y. Nov. 26, 2018)(quoting *Tubbs v. Stony Brook University*, No. 15 Civ. 0517 (NSR), 2016 WL 8650463, at *9 (S.D.N.Y. Mar. 4, 2016)) (emphasis in original). Evaluating *Simpson*, the *Roskin-Frazee* court rejected a claim of a generalized awareness by Columbia University of the problem of sexual misconduct on campus and of its deficiencies in responding to the problem when it stated: "[a]s pre-assault cases have readily acknowledged, 'something more than [a] general knowledge of assaults campus-wide (*i.e.*, some greater specificity) is required to satisfy the actual knowledge requirement [for Title IX liability].'" *Id.* (quoting *Tubbs*, 2016 WL 8650463, at *9).

In the Tenth Circuit, *Simpson* involved allegations of sexual assault by football recruits where University of Colorado officials were warned about the serious risk of sexual assaults if they failed to implement adequate policies for supervising recruits and sexual-assault prevention training for athletes. *See Simpson*, 500 F.3d at 1173. Similarly, in the Middle District of Tennessee a pre-assault claim survived where plaintiffs were sexually assaulted by student-athletes and the university had known about assaults, and had attempted to cover them up, for at least 20 years. *See Doe v. University of Tennessee*, 186 F.Supp.3d 788, 805-808 (M.D. Tenn. 2016). S*ee also Doe v. Michigan State University*, No. 1:18-cv-390, 2019 WL 5085567, at *8-10 (W.D. Mich. Aug. 21, 2019)(allowing an official policy claim to proceed where plaintiff alleged sexual assaults by student-athletes and plaintiff claimed reports against athletes were handled differently "behind closed doors"). *Karasek* seemingly stands alone in eschewing actual knowledge and allowing a broader claim to proceed. *See Karasek*, 956 F.3d at 1114. The Ninth Circuit still requires,

however, that a plaintiff establish the heightened risk be known or obvious, which it found in the university's program of actively redirecting sexual assault reports outside of the Title IX process.

Absent guidance from the Seventh Circuit, the Court must determine whether Reed states a viable claim for relief based on persuasive, rather than binding, precedent. In *Davis*, the Supreme Court was clear that, based on *Gebser*, actual notice "is not a bar to liability where a funding recipient intentionally violates the [Title IX] statute." *Davis*, 526 U.S. at 642. As discussed above, some courts require specific or particularized notice in pre-assault claims. The Ninth Circuit requires only that the risk be "known or obvious." As analyzed in *Karasek*, if Reed could establish that SIUE intentionally pursued an official policy that discriminated on the basis of sex, then she could state a claim without demonstrating actual knowledge as required by some courts.

The problem is that Reed does not allege intentional pursuit of an official policy that resulted in gender discrimination. She alleges that SIUE was warned by the Department of Education in August 2017 that it had a pattern of failing fully to investigate sexual assault claims and that its investigations were known to exclude relevant evidence and to miss timely deadlines. Reed also claims that parents of a woman who reported a sexual assault wrote to the Board of Trustees to warn them that their deficient investigation process empowered and emboldened perpetrators.

Reed does not address how, outside of the opinions of another student's parents, the deficient and slow investigative process led to her being sexually harassed or how the process created a heightened risk of sexual harassment that was obvious to SIUE. Despite

Reed's argument that the Department of Education warned SIUE that its investigations were flawed and would cause a heightened risk of sexual harassment or sexual violence, the second amended complaint does not allege that such a warning was issued by anyone other than the parent of another student. If such a warning existed from an official or agency, Reed's claim would be more similar to that of the plaintiffs in *Simpson* who were assaulted after, among other allegations, a local prosecutor warned the university of a heightened risk caused by their failure to supervise athletic recruits. Instead, Reed's claim is more akin to that in *Roskin-Frazee* and *Tubbs*, discussed above, where something more than the university's general knowledge of assaults on campus and awareness by the university of its deficient response was required to state a claim.

Even under the relaxed notice-pleading requirements of Rule 8, a plaintiff must provide more than threadbare recitals of the elements of a claim. The allegations in Reed's complaint instead suggest that the school was reckless or negligent in its investigatory process by failing to comply with Title IX timing and evidentiary requirements, rather than having a clear intention to slow or redirect investigations in order to discriminate based on gender. In that way, Reed's claim fails to rise to the level of the claim in *Karasek*. The allegations in the second amended complaint are insufficient to establish that there was a heightened risk that was known or obvious, if this Circuit followed the logic of *Karasek*, or that there was actual knowledge by SIUE that it was deliberately indifferent to ahead of the attack on Reed, as other courts require. Specifically, the Court finds that, absent an allegation of actual notice of a particularized risk, the pre-assault claim in Count V should be dismissed.

CONCLUSION

For the above-stated reasons, Defendant SIUE's motion to dismiss (Doc. 103) is

**GRANTED in part** and **DENIED in part**. References to Ashley Cox as a defendant are

stricken from Plaintiff Bailey Reed's second amended complaint, and Count V is

dismissed for failure to state a claim. Counts I, II, III, and IV remain pending. To the extent

that SIUE needs to amend its answer to Reed's amended complaint, it shall do so no later

than July 1, 2020.

      **IT IS SO ORDERED.**

      Dated:  June 10, 2020.

Digitally signed by Judge Sison
Date: 2020.06.10 11:48:35 -05'00'

GILBERT C. SISON
United States Magistrate Judge